# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

### NOVEMBER SESSION, 1998

FILED

May 26, 1999

Cecil W. Crowson
Appellate Court Clerk

| | | |
|---|---|---|
| **JAMES H. REGISTER,** | ) | **C.C.A. NO. 01C01-9805-CC-00199** |
| | ) | |
| Appellant, | ) | |
| | ) | |
| | ) | **BEDFORD COUNTY** |
| **VS.** | ) | |
| | ) | **HON. CHARLES LEE** |
| **STATE OF TENNESSEE,** | ) | **JUDGE** |
| | ) | |
| Appellee. | ) | **(Post-Conviction)** |

FOR THE APPELLANT:

JOHN E. HERBISON
2016 Eighth Avenue South
Nashville, TN 37204

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KAREN M. YACUZZO
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

MIKE MCCOWN
District Attorney General

ROBERT CRIGLER
Assistant District Attorney
Bedford County Courthouse
Shelbyville, TN 37160

OPINION FILED _____

AFFIRMED

JERRY L. SMITH, JUDGE

# OPINION

The petitioner, James H. Register, appeals the Bedford County Circuit Court's order denying his petition for post-conviction relief after an evidentiary hearing. Register was convicted in 1992 of one (1) count of aggravated robbery and one (1) count of aggravated burglary and received an effective sentence of thirty (30) years.[1] Petitioner subsequently filed the present petition which alleged numerous constitutional violations. On appeal, the petitioner contends that (1) the state withheld exculpatory information at a suppression hearing prior to trial; (2) the state knowingly presented false testimony at trial; and (3) trial counsel was ineffective for failing to discover such exculpatory information. After a thorough review of the record before this Court, we affirm the judgment of the trial court.

## FACTUAL BACKGROUND

### A. Trial

We will recite the facts as set out by this Court on direct appeal:

> On October 8, 1991, at 5:10 a.m., a Bedford County resident was accosted in the bathroom of her home by a man wearing a nylon stocking over his head. The intruder, brandishing a pocket knife, demanded the victim's money and was given $8 from the victim's pocket. The intruder then demanded the victim remove her panties and the victim refused since her two year old son was watching. The intruder ordered the victim to make her son lay down and again demanded she drop her panties. The victim explained that she was on her monthly period and was wearing a pad. Eventually she dropped her panties and the intruder started undoing his pants, spied her pad, turned and walked through the back door of her home after cutting the telephone cord. A week later the victim

---

[1] Petitioner was also convicted of aggravated kidnapping, but the aggravated kidnapping conviction was reversed by this Court on direct appeal. *See* State v. James H. Register, C.C.A. No. 01C01-9210-CC-00329, 1993 Tenn. Crim. App. LEXIS 538, Bedford County (Tenn. Crim. App. filed August 12, 1993, at Nashville), *perm. to app. denied* (Tenn. December 28, 1993).

identified a photograph she selected as being similar to her attacker. This was not the defendant. Later that day she subsequently identified the defendant in a line-up. The victim identified the defendant's flannel jacket as being the jacket worn by the intruder. This testimony and other evidence convinced the jury the defendant committed these offenses.

State v. James H. Register, 1993 Tenn. Crim. App. LEXIS 538, at *1-2.

## B. Suppression Hearing

Prior to trial, the trial court held a hearing on the petitioner's motion to suppress items of evidence seized pursuant to a stop of his vehicle by law enforcement authorities. Detective Ed Luther of the Rutherford County Sheriff's Department testified that two incidents similar to the present case occurred in Rutherford County in the fall of 1991. The law enforcement authorities had a description of the suspect, and a Camaro automobile was seen in the vicinity of the crime in both cases. Detective Luther spoke with Bedford County authorities who advised him about the October 8 incident. The Bedford County Sheriff's Department further advised that Register drove a Camaro which matched the description and he worked in Rutherford County. Luther also had information that Register was driving on a suspended driver's license.

Luther then took a witness to the parking lot of Register's place of employment, and the witness identified the Camaro as the vehicle seen at the scene of one of the Rutherford County offenses. Luther and other officers watched the vehicle until Register got into the vehicle and drove from the parking lot. When Luther noticed that Register matched the description of the suspect, the officers stopped the petitioner's vehicle. Register was frisked, and a pocket knife was found in his pocket. The officers obtained consent to search the vehicle and seized various items of evidence, including gloves, scissors, a box

cutter, boots and a jacket. A pair of women's stockings were also taken from the petitioner's car.

The officers subsequently took the petitioner to the Sheriff's Department, where the petitioner waived his rights and gave a statement to the officers. In his statement, the petitioner denied culpability for the offenses, but admitted to being in the vicinity of one of the offenses around the approximate time that the offense occurred. The officers thereupon arrested the petitioner in connection with the Rutherford County offense, but did not arrest the petitioner for driving on a revoked license. Articles of clothing worn by the petitioner at the time he was arrested were also seized by the authorities.

The trial court found that based upon the identification of the petitioner's vehicle, the officers had reasonable suspicion to stop the petitioner. The trial court further found that the petitioner gave the officers consent to search his vehicle and, as a result, denied the petitioner's motion to suppress the items seized from the vehicle at that time. However, the trial court determined that the officers did not have probable cause to arrest the petitioner and suppressed the items seized subsequent to his arrest.

### C. Post-Conviction Hearing

At the post-conviction hearing, the petitioner testified that he was thirty-five (35) years old and had an eleventh grade education. He stated that he was represented at trial by the public defender's office. He claimed that his attorney did not discuss the investigation of his case or any defense strategies with him. Although he acknowledged that his attorney discussed the suppression hearing with him, he testified that there was no discussion as to why some items of evidence were suppressed and others were not. He stated that, subsequent to his trial and appeal, he was involved in a federal lawsuit against Detective Luther

-4-

and in connection with such lawsuit, received discovery materials, including an investigation report prepared by Detective Luther. In the investigation report, Detective Luther states that the officers conducted a second search of the petitioner's vehicle after the petitioner was arrested. The pair of women's stockings were recovered during that second search.

Detective Luther also testified at the post-conviction hearing. Luther admitted conducting a second search of Register's vehicle which produced the pair of women's stockings. However, Luther could not recall whether the investigative report was given to the Bedford County District Attorney's Office.

The petitioner was represented by Forest Durard of the Public Defender's Office at trial. At the time of the petitioner's trial, Durard had been involved in approximately thirty (30) jury trials. Durard testified that he met with the petitioner approximately nine (9) times in preparation for trial. Durard received the state's file on the petitioner's case around the time that the preliminary hearing was to take place. Because the petitioner agreed to waive his preliminary hearing, the assistant district attorney agreed to open file discovery. Durard testified that he investigated case law and reviewed the discovery materials in preparation for the petitioner's suppression hearing. He was unaware that the officers conducted a second search of his client's vehicle until the petitioner's appeal had concluded. Durard stated that he did not obtain a copy of the investigative report in preparation for trial, and to his knowledge, such report was not in the state's file. He testified that, in his experience with the Bedford County District Attorney's Office, he "had no reason to believe that the attorney general's office had [the report]."

Assistant District Attorney Robert Crigler testified at the hearing that he assisted in the petitioner's trial. He was not intimately involved in the pre-trial

matters on this case, but reviewed the state's file and did not find the investigative report prepared by Detective Luther.[2]

In a written order, the trial court observed that although the items seized from the petitioner's vehicle at the time of the initial stop were admissible at trial, both defense counsel and the trial court were led to believe that the women's stockings were seized at the time of the initial stop. The court determined that information was withheld from the defense regarding the seizure of these stockings. The trial court further determined that had trial counsel been aware of this second search, he would have been successful in suppressing the stockings as evidence in the petitioner's trial due to the court's previous ruling that all items seized subsequent to the petitioner's arrest were inadmissible. However, the trial court noted that the stockings were merely a "minor part of the proceedings," and the "heart of the state's case against the petitioner was the eyewitness identification by the victim." Although the stockings were corroborative of the victim's identification, the trial court found that other items of properly admissible evidence also corroborated the victim's testimony. Finding that the stockings were not material to the state's case under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny, the trial court denied post-conviction relief in this regard. Furthermore, the trial court found that the petitioner did not receive ineffective assistance of counsel with regard to his attorney's failure to discover the second search of the vehicle because the petitioner could not demonstrate how he was prejudiced. As a result, the trial court denied the post-conviction petition. From the trial court's order, the petitioner brings this appeal.

---

[2] Gary Jones, lead counsel for the state in this case, was deceased at the time of the hearing.

## POST-CONVICTION STANDARD OF REVIEW

In post-conviction proceedings, the petitioner bears the burden of proving the allegations raised in the petition by a preponderance of the evidence.[3] Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996); Wade v. State, 914 S.W.2d 97, 101 (Tenn. Crim. App. 1995). Moreover, the trial court's findings of fact are conclusive on appeal unless the evidence preponderates against the judgment. Tidwell v. State, 922 S.W.2d at 500; Campbell v. State, 904 S.W.2d 594, 595-96 (Tenn. 1995); Cooper v. State, 849 S.W.2d 744, 746 (Tenn. 1993).

## EXCULPATORY EVIDENCE

In his first issue, the petitioner claims that the state withheld exculpatory information regarding the seizure of the women's stockings during the second search of his vehicle. He argues that trial counsel would have been successful in suppressing the stockings as evidence at trial had counsel been aware that the officers conducted a second search of the vehicle. Because the stockings were admitted as evidence in the petitioner's trial, he contends that he is entitled to a new trial.

In Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of good faith or

---

[3] Under the 1995 Post-Conviction Procedure Act, the petitioner has the burden of proving his claims by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). However, since the present petition was filed prior to the effective date of the 1995 act, the petitioner's claims must be proven by a preponderance of the evidence.

bad faith of the prosecution." *See also* <u>Hartman v. State</u>, 896 S.W.2d 94, 101 (Tenn. 1995).  In order to establish a due process violation under <u>Brady</u>, four prerequisites must be met:

> 1.  The defendant must have requested the information (unless the evidence is obviously exculpatory, in which case the State is bound to release the information whether requested or not);
>
> 2.  The State must have suppressed the information;
>
> 3.  The information must have been favorable to the accused;  and
>
> 4.  The information must have been material.

<u>State v. Edgin</u>, 902 S.W.2d 387, 389 (Tenn. 1995).  The burden of proving a Brady violation rests with the defendant, and the violation must be proven by a preponderance of the evidence.  <u>Id.</u>; <u>State v. Spurlock</u>, 874 S.W.2d 602, 610 (Tenn. Crim. App. 1993).

In determining the materiality of undisclosed information, a reviewing court must establish whether "in [the] absence [of the information] [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence." <u>Kyles v. Whitley</u>, 514 U.S. 419, 434, 115 S. Ct. 1555, 1566, 131 L. Ed. 2d 490 (1995).  In other words, evidence is considered material only if there is a reasonable probability that had the evidence been disclosed to the defense, the results of the proceeding would have been different.  <u>Kyles v. Whitley</u>, 514 U.S. at 433, 115 S. Ct. at 1565; <u>State v. Edgin</u>, 902 S.W.2d at 390.

In its order denying post-conviction relief, the trial court found that the state withheld information concerning the seizure of the stockings, and if such information had been disclosed, trial counsel would have been successful in suppressing the stockings from evidence at trial.  However, the trial court found that such information was not material.  We agree.

-8-

The victim testified unequivocally at trial that the petitioner was the man who attacked her on October 8, 1991. Although she was unable to identify the petitioner from a photographic line-up, she identified the petitioner prior to trial in a physical line-up. Detective Dale Elliott of the Bedford County Sheriff's Department testified that the victim showed no hesitation in identifying the petitioner during the physical line-up. Furthermore, the victim identified a pocket knife found on the petitioner as resembling the one used by her attacker and a flannel jacket found in the petitioner's car as one worn by the perpetrator.

Moreover, Shirley Clanton, the petitioner's neighbor, testified that she read a newspaper article on October 8 which described the incident and the suspect, as well as the suspect's clothing. She notified the authorities when she noticed that the petitioner matched the description of the suspect and was wearing similar clothing on October 8.

Betty Jones testified that she and the petitioner lived together at the time of the incident, and the petitioner was driving her vehicle on the day he was stopped by the law enforcement authorities. She stated that she frequently wore the type of stockings found by the officers in her car because she was pregnant. She further testified that she often removed her stockings in her car due to swelling in her legs and feet.

The victim's identification of the petitioner as the perpetrator of the crime was uncontroverted. Furthermore, the state presented evidence which corroborated the victim's identification testimony. The presence of stockings in the petitioner's vehicle was only slight corroborative evidence of the perpetrator's identity. Additionally, when coupled with Betty Jones' explanation as to the presence of the stockings in the car, the significance of the stockings diminishes. The petitioner has not demonstrated a reasonable probability that, had the

stockings been suppressed at trial, the result of the proceeding would have been different. As a result, we agree with the trial court that the petitioner has not carried his burden in this regard.

This issue is without merit.

## FALSE TESTIMONY

In a related issue, the petitioner argues that the state knowingly presented the false testimony of Detective Luther at the suppression hearing. He asserts that Detective Luther's testimony implied that all of the items were seized from the vehicle at the time of the initial stop. Thus, the petitioner claims that the state's failure to correct Detective Luther's misleading testimony deprived him of a fair trial.

"[A] conviction obtained through the use of false evidence, known to be such by representatives of the State" deprives a defendant of due process. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); *see also* Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); State v. Spurlock, 874 S.W.2d 602, 617 (Tenn. Crim. App. 1993). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. at 269, 79 S.Ct. at 1177. Therefore, when a witness testifies falsely, either on direct or cross-examination, the state has an affirmative duty to correct such false testimony. State v. Spurlock, 874 S.W.2d at 617.

To prevail on a claim that the state knowingly presented false testimony, the appellant must show by a preponderance of the evidence "(a) that false or perjured testimony was admitted at trial, (b) that the state either knowingly used

-10-

such testimony or knowingly allowed it to go uncorrected, and (c) that the testimony was material and deprived him of a fair trial." Roger Morris Bell v. State, C.C.A. No. 03C01-9210-CR-00364, 1995 Tenn. Crim. App. LEXIS 221, at *9, Hamilton County (Tenn. Crim. App. filed March 15, 1995, at Knoxville), *perm. to app. denied* (Tenn. August 28, 1995); *see also* Phillip Shupe v. State, C.C.A. No. 03C01-9804-CC-00126, 1999 Tenn. Crim. App. LEXIS 111, at *4, Bradley County (Tenn. Crim. App. filed February 9, 1999, at Knoxville).

It is unclear whether Detective Luther deliberately falsified his testimony regarding the second search or merely limited his answers to the questions posed to him. Regardless, it is clear that Luther's testimony can arguably be construed as misleading. However, there is no indication in the record that the Bedford County District Attorney's Office knew that such testimony was misleading. Indeed, the petitioner recognizes in his brief that "[t]he record does not disclose whether any prosecuting attorney was aware of Detective Luther's duplicity." Assistant District Attorney Crigler testified at the post-conviction hearing that the state's file did not contain the investigative report prepared by Luther which revealed the second search. Without any evidence to the contrary, we are reluctant to hold that the state knowingly presented false or misleading testimony.

In any event, the petitioner has not demonstrated that the evidence was material and deprived him of a fair trial. As we previously stated, the stockings constituted very little of the state's proof of the petitioner's identity. If the state had corrected Detective Luther's testimony and the stockings were ruled inadmissible, we are not convinced that a reasonable probability exists that the result of the proceedings would have been different. Thus, the petitioner's claim in this regard must fail.

-11-

This issue has no merit.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In his final issue, the petitioner claims that trial counsel was ineffective for failing to discover the second illegal search at the time of the suppression hearing. Essentially, he argues that trial counsel did not effectively cross-examine Detective Luther at the suppression hearing. He contends that had trial counsel asked the proper questions during the suppression hearing, the trial court would have suppressed the stockings as evidence. Therefore, he maintains that trial counsel's performance was deficient, and he was prejudiced as a result.

The United States Supreme Court articulated a two-prong test for courts to employ in evaluating claims of ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The Court began its analysis by noting that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. When challenging the effective assistance of counsel in a post-conviction proceeding, the petitioner bears the burden of establishing (1) the attorney's representation was deficient; and (2) the deficient performance resulted in prejudice so as to deprive the defendant of a fair trial. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). This Court is not required to consider the two prongs of Strickland in any particular order. Harris v. State, 947 S.W.2d 156, 163 (Tenn. Crim. App. 1996).

-12-

"Moreover, if the Appellant fails to establish one prong, a reviewing court need not consider the other." Id.

The test in Tennessee in determining whether counsel provided effective assistance at trial is whether counsel's performance was "within the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975); *see also* Harris v. State, 947 S.W.2d at 163. In order to demonstrate that counsel was deficient, the petitioner must show that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 688, 104 S.Ct. at 2064; Harris v. State, 947 S.W.2d at 163.

Under the prejudice prong of Strickland, the petitioner must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

In reviewing counsel's conduct, a "fair assessment . . . requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065. The mere failure of a particular tactic or strategy does not *per se* establish unreasonable representation. Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996). However, this Court will defer to counsel's tactical and strategic choices only where those choices are informed ones predicated upon adequate preparation. Id.; Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

The trial court found that trial counsel's performance was not deficient in this case. Furthermore, the trial court found that the petitioner had not

demonstrated how he was prejudiced by his attorney's alleged deficiency. We agree.

Trial counsel testified that he received open file discovery from the state but did not receive Detective Luther's investigative report which revealed the second search of the petitioner's vehicle. He was unaware of the second search until after the petitioner's appeal had concluded. Durard testified that he thoroughly investigated case law and reviewed his discovery materials in preparation for the suppression hearing. Trial counsel had no reason to believe that a second search of the vehicle was conducted; therefore, he had no reason to question Detective Luther concerning the second search of the vehicle. As a result, the petitioner has not proven that trial counsel's performance in this regard was deficient.

Furthermore, the petitioner has not demonstrated how he was prejudiced by this alleged deficiency. We have previously concluded that the admission of the stockings as evidence did not materially affect the state's case against the petitioner. As such, the petitioner has not shown "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland v. Washington, 466 U.S. at 694, 104 S.Ct. at 2068.

This issue has no merit.

## CONCLUSION

After a thorough review of the record before this Court, we conclude that the petitioner has not proven his allegations by a preponderance of the evidence. Accordingly, the judgment of the trial court denying post-conviction relief is affirmed.

However, upon our review of the record, we observe that the judgments of conviction indicate that the petitioner was sentenced as a Mitigated Offender. However, a reading of the transcript reveals that the petitioner was sentenced as a Range II, Multiple Offender. When there is a conflict between the court minutes or judgment and the transcript, the transcript controls. State v. Moore, 814 S.W.2d 381, 383 (Tenn. Crim. App. 1991). As a result, this case must be remanded to the trial court for entry of proper judgments.

_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
GARY R. WADE, PRESIDING JUDGE


_____
JOHN H. PEAY, JUDGE